# N. Y. COMMON PLEAS.

## In the matter of JOSEPH SMAL.

*Application for discharge of insolvent — Res adjudicata.*

Where, upon an application made by an insolvent debtor for a discharge,
it appears that the petitioner has before, under the same statute, applied
to a justice of the supreme court of this state for his discharge, and in
that application issue was duly joined, a trial had, and after a full hear-
ing the application was denied upon the merits, an order duly entered
and served, from which no appeal has been taken, and no application
made to open those proceedings or to amend the same, *held,* that the
doctrine of *res adjudicata* applies, and the application should be denied.

*At Chambers, August,* 1877.

THE above-named Joseph Smal was, by an order granted
by the supreme court of this department, arrested for falsely
and fraudulently contracting the indebtedness which was the
subject of an action brought against him by the creditor,
Jacob Tartter, in a suit in said court, in March, 1876. No
motion was ever made by him to vacate that order of arrest,
and the same has ever since remained in full force and effect
therein against him.

After issue was joined by his sworn answer in that action,
the suit came to trial at a special circuit of said court, and
on the 9th day of May, 1876, judgment was rendered against
him for $2,137.40 damages, including interest, the full amount
of the plaintiff's claim therein.

On the 10th day of May, 1876, judgment for $2,326,
damages and costs, was entered in favor of said Jacob Tartter
against said Joseph Smal, in the office of the clerk of this
county, in said action; and on the same day execution thereon
was duly issued to the sheriff of this county against property

of the said Joseph Smal, and thereafter duly returned "*nulla bona*" by said sheriff.

Thereupon, and on the 5th day of August, 1876, an execution upon said judgment was duly issued against the person of Smal, to the same sheriff, and the said Smal duly charged in execution thereunder, and has ever since been in full force and effect against him.

On the 14th day of November, 1876, the said Smal, by the service of his petition, with notice of motion, commenced proceedings in said supreme court, in this department, for his discharge from said execution against his person, as an imprisoned debtor under the sixth article, chapter 5, title 1, part 2 of Revised Statutes.

This application was opposed by Mr. Tartter, and after a full and exhaustive hearing and examination of Smal before the court, the motion for his discharge was fully argued before, and submitted to, justice DONOHUE, of that court, on the 24th day of December, 1876, and that on the twenty-sixth day of the same month the said justice denied the motion and remanded the prisoner to the custody of the sheriff under the said execution against his person, and an order to that effect was on the same day duly entered, and on the second day of January next following duly served on the said Smal's attorney in that proceeding.

Thereafter, and on the 10th day of January, 1877, said Smal moved before said justice DONOHUE for a reargument of said motion, and the same was by said justice DONOHUE denied, and an order to that effect duly entered, and on the thirteenth day of January, same year, a copy of the last-named order duly served on the attorney for said Smal in those proceedings.

No appeal has ever been taken by said Smal from either of those orders of 26th December, 1876, and 10th January, 1877, and each of them still remain in full force and effect against the prisoner.

The said Joseph Smal did thereafter, by another attorney,

in this court, institute the same proceedings for his discharge from said imprisonment under the same statute, namely: Article 6, chapter 5, title 1, part 2, by service of his petition and notice of motion in this court therefor, on the sixteenth day of March last past, returnable at special term thereof, on the thirty-first day of the same month, at ten o'clock in the forenoon, or as soon thereafter as counsel can be heard. Which proceedings were, after many adjournments, had on the 13th day of May, 1877, and dismissed on Smal's failure to appear, and his application for his discharge, and all proceedings thereunder, denied.

On the 6th day of July, 1877, said Smal again makes the same application to this court upon the same kind of papers, returnable July 25, 1877, at special term.

*Jesse K. Furlong*, counsel for creditor Jacob Tartter.

I. The papers presented by the petitioner on this application show " that he is a prisoner confined in the county jail of the city and county of New York on execution issued out of the supreme court against the person of your petitioner for false and fraudulent pretenses in the purchase of goods, wares and merchandise." Consequently he is not entitled to his discharge. His proceedings not being just and fair, as defined by the foregoing act, no relief can be granted to him. In *The Matter of Brady* (*reported in* 8 *Hun*, 437) the supreme court of this department at general term, March, 1876, in overruling the order of justice DONOHUE, discharging a prisoner in proceedings like the present, where it was shown that no part of any former estate or property of the prisoner was in the hands of any person, fraudulently or otherwise, except what passed to his assignee in insolvency, nevertheless held that the nature of the debts and the acts for which the judgment were obtained, if his acts were not just and fair, precluded him from applying for the benefit of the act, holding that the necessity of all the prisoners' proceedings being just and fair, applied not to the proceedings upon which the appli-

cation was made alone, but to those matters in the suit in which the judgment was obtained. This decision was affirmed in the court of appeals (*See ante*, 128).

II. The act in question was created solely for the benefit of poor but unfortunate debtors, and not for the relief of the fraudulent debtor (*Matter of Watson*, 2 *E. D. Smith*, 429; *Gaul* agt. *Clark*, 1 *N. Y. W. D.*, 209; *In re Walter Brady*, 8 *Hun*, 37; *Matter of Pie*, 10 *Abb. P. R.*, 409; *People* agt. *White*, 14 *How. P. R.*, 429). In *The Case of Watson* (2 *E. D. Smith*, 429), this court held as follows: "The proceedings of 2 Revised Statutes, 31, which forbids a discharge if the debtor has fraudulently disposed of his property, or in case his proceedings have not been just and fair, contain no limitations as to time; and it is immaterial whether a fraud upon his creditors is perpetrated before the imprisonment in execution or intermediate the arrest and execution." And again, in *The Matter of Pie* (*supra*), the supreme court in this department laid down the rule: "An insolvent is not entitled to his discharge from an indebtedness which arose from his embezzlement of money and evidence of debt, which came to the possession of the prisoner, as a clerk, in the course of his employment."

III. The petitioner has before, under the same statute, applied to a justice of the supreme court of this state for his discharge, and on that application issue was duly joined, a trial had, and after a full hearing the application was denied upon the merits, an order duly entered and served, from which no appeal has been taken, and no application made to open those proceedings or to amend the same. The doctrine of *res adjudicata* applies. The petitioner should have either moved to open these proceedings, or have appealed from the order so entered. He was entitled to such an appeal by the Laws of 1854, chapter 270, page 592 (*Matter of Livingston*, 34 *N. Y.*, 557). *Certiorari* will remove to the supreme court for examination and review (2 *R. S.*, 49, 50; *and Laws of* 1874, *chap.* 280, *sec.* 17; *Gardner* agt. *Commissioners*, 10 *How.*

*Pr. R.*, 181; *People ex rel. Louis* agt. *J. F. Daly*, 4 *Hun*, 641; *Morewood* agt. *Hollister*, 6 *N. Y.*, 309). The principle of *res adjudicata* applies in cases like the present one (*Demorest* agt. *Day*, 32 *N. Y.*, 281; *White* agt. *Coatsworth*, 6 *N. Y.*, 137; *Yonkers and N. Y. F. I. Co.* agt. *Bishop*, 1 *Daly*, 449; *Powers* agt. *Witty*, 42 *How. P. R.*, 352; *People ex rel. Lockwood* agt. *Akin*, 4 *Hill*, 606). In *Brown* agt. *Mayer*, in court of appeals (13*th June*, 1876, *reported in Weekly Digest of September* 11, 1876, *vol.* 3, *No.* 5, *p.* 119), held that the date of *res adjudicata* applies not only to judgments, but to all judicial proceedings, whether made in actions or summary or special proceedings, or by a judicial officer in matters properly submitted to their determination. *Matter of Rosenberg* (10 *Abb.* [*N. S.*], 450), *Matter of Thomas* (10 *Abb. P.* [*N. S.*], 114), are cases in point. If the debtor can make a second application, after being defeated in the first, there can be no limit to the applications, and the creditor may better abandon his claim at once than think of opposing a discharge. Per BRONSON, J., in *People* agt. *Allen* (4 *Hill*, 608). In *The Matter of Andrew L. Roberts*, just decided by the general term of the supreme court of this department (10 *Hun*, 253), the court has expressly decided that an application like the present one is, after the decision of justice DONOHUE, *res adjudicata.* The case of Roberts is in all respects identical with the one now before this court. Affirmed in court of appeals (*See ante*, 199).

IV. The copy petition of the applicant is defective in not having attached thereto the usual sheriff's certificate of imprisonment. This is a defect going to the jurisdiction of these proceedings, and as these proceedings are purely statutory, they must be strictly followed, and if any defect occurs therein, it cannot be cured by amendment. *Quære :* Can this court review and reverse an order of the supreme court made in reference to a judgment of the latter court? Certainly not. For the foregoing reasons the present application should be denied, with costs.

Matter of Smal.

*Peter Mitchell*, counsel for applicant, argued that the law should be construed according to the intent of the law-making power ; that it had been the policy of the law-making power in all civilized countries to reduce the penalties for crimes, and to legislate in favor of the liberty of the citizen. He cited the case of *The Royal Commission*, in 1836, which reduced the then thirty-six death penalties to six, and since that time they have been reduced to two, and in this state the legislature intended to abolish imprisonment for debt, and had so modified previous laws that an application can now be made by an imprisoned debtor as often as he desires ; that if it were not so, and if the debtor had no money and no friends to come forward to pay the judgment, and his application were denied, he would have to remain in prison during his natural life, if the doctrine of *res adjudicata* applied, and claiming that the court of appeals had substantially reversed the opinion of the general term in the *Roberts Case*, which had sustained the *res adjudicata* theory.

VAN HOESEN, *J.* — The decision of the general term of the supreme court *In the Matter of Andrew L. Roberts*, though not of binding authority in this court, is entitled to so much weight and consideration that I shall follow it and govern my action by it. Where there are in one city three courts of con-current jurisdiction, good order requires that they shall so conduct their affairs that no one of them shall interrupt or weaken the force of the proceedings and adjudications of either the others. If counsel has discovered new evidence, which establishes the innocence of his client, let him apply to the court which formerly adjudged his client to be guilty of fraud, and he may there obtain leave to present his new proofs. Unless counsel expects the court of common pleas to reverse, modify or make void the decision of the supreme court, I can perceive no reason for making this application to the common pleas instead of applying to the supreme court for leave to renew in that court his former application.